IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KF TEA USA INC. and KF TEA FRANCHISING LLC, | |
| Plaintiffs, | Civil Action No. 1:23-cv-843-AJT-LRV |
| -against- | **JURY TRIAL DEMANDED** |
| TEA N'BOBA ENTERPRISES LLC, TOAN VAN NGUYEN and VY NGUYEN, | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
## TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Abelino "Abel" Reyna
Bar # 24000087
**Patterson & Sheridan LLP**
729 Washington Avenue, Suite 200
Waco, Texas 76701
(Tel): 254-777-5248
(Fax): 877-777-8071
(email): areyna@pattersonsheridan.com

Tony V. Pezzano
To Be Admitted Pro Hac Vice
Tony.Pezzano@offitkurman.com
Matthew D. Asbell
To Be Admitted Pro Hac Vice
Matthew.asbell@offitkurman.com
Chintan A. Desai
To Be Admitted Pro Hac Vice
Chintan.desai@offitkurman.com
**Offit Kurman, P.A.**
590 Madison Ave, 6th Floor
New York, NY 10022
(Tel): 212-545-1900
(Fax): 212-545-1656

*Attorneys for Plaintiffs KF Tea USA Inc. and
KF Tea Franchising LLC*

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................ 3

    A.  Plaintiffs' KUNG FU TEA® Branded Business And Incontestable, Federally Registered Trademarks ................................................................. 3

    B.  Defendants Secretly Opened Their Unauthorized KUNG FU BOBA Restaurant In Violation Of Their Termination Obligations Under The FA .............................. 6

        1.  Relevant Terms Of Defendants' FA And Defendant Toan Van Nguyen's Guarantee And Assumption Of Obligations Agreement With Plaintiff KFTF ........................................................................................... 12

        2.  Defendants' Termination And Closing Agreement ........................... 14

        3.  Defendants' Violation Of Their Post-Termination Obligations ........ 15

III.  LEGAL STANDARD FOR TRO/PI .............................................................. 15

IV.   ARGUMENT ................................................................................................... 16

    A.  Plaintiffs Are Substantially Likely To Succeed On The Merits ............... 16

        1.  Plaintiffs Will Prevail On Their Trademark Infringement Claims Under The Lanham Act And Texas Common Law ...................................... 17

        2.  Plaintiffs Will Prevail On Their Breach Of Contract Claims ........... 21

    B.  Plaintiffs Will Suffer Irreparable Harm Absent A TRO/PI ..................... 23

    C.  Any Potential Harm To Defendants Would Be Minimal And Would Be Far Outweighed By The Threatened Harm To Plaintiffs ................................. 24

    D.  Enjoining Defendants Serves The Public Interest .................................... 24

    E.  Plaintiffs Should Not Be Required To Post A Bond ................................. 25

V.    CONCLUSION ............................................................................................... 25

i

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*BE Brands, LLC v. Yiwu Dingyi E-Commerce Co.,*
    1:22-cv-278-RP, 2022 WL 5568332 (W.D. Tex. 2022) .................................................. 23, 24

*Board of Supervisors for Louisiana State University Agricultural Mechanical College v. Smack Apparel Co.,* 550 F.3d 465 (5th Cir. 2008) ............................................................................. 21

*CICI Enterprises, LP v. Fogel Enterprises, Inc.,*
    2023 WL 2731048 (N.D. Tex. 2023 .................................................................. 16, 21, 23, 24

*Donohue v. Wang,*
    22-cv-583-DH, 2023 WL 4110543 (W.D. Tex. 2023).................................................... 19

*EKF Diagnostics Inc.,*
    2018 WL 3603070........................................................................................................... 24

*Federal Sav. & Loan Ins. Corp. v. Dixon,*
    835 F.2d 554 (5th Cir. 1985) ......................................................................................... 16

*Kaepa, Inc. v. Achilles Corporation,*
    76 F.3d 624 (5th Cir. 1996)............................................................................................ 25

*National Bank of Texas, Laredo, Texas v. Union National Bank of Texas, Austin, Texas,*
    909 F.2d 839 (5th Circ. 1990) ...................................................................................... 17

*Nichols v. Alcatel USA, Inc.,*
    532 F.3d 364 (5th Cir. 2008)......................................................................................... 16

*Savage Tavern, Inc. v. Signature Stag, LLC,*
    589 F.Supp.3d 624 (N.D. Tex. 2022)....................................................................... 17, 18

*Sierra Club, Lone Star Chapter v. F.D.I.C.,*
    992 F.2d 545 (5th Cir. 1993) ......................................................................................... 16

*Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.,*
    851 F.3d 440 (5th Cir. 2017)............................................................................ 17, 18, 19, 20

*Weinberger v. Romero-Barcelo,*
    456 U.S. 305 (1982) ...................................................................................................... 15

*Whirlpool Corporation v. Shenzhen Sanlida Electrical Technology Company, Ltd.,*
    80 F.4th 536 (5th Cir. 2023).................................................................................... 16, 23

## <u>Statutes</u>

15 U.S.C. §1051 ........................................................................................................ 3

15 U.S.C. §1114 ........................................................................................................ 1

15 U.S.C. §1125(a) .................................................................................................... 1

15 U.S.C. §1116 ................................................................................................... 15, 16

15 U.S.C. §1116(a) ................................................................................................... 23

15 U.S.C. 1125(c) ...................................................................................................... 1

## <u>Rules</u>

Fed. R. Civ. P. 65 .................................................................................................... 15

Rule 65(c) ................................................................................................................ 25

Plaintiffs KF Tea USA Inc. ("KFTU") and KF Tea Franchising LLC ("KFTF") (collectively "Plaintiffs") respectfully submit this Memorandum In Support Of Plaintiffs' Motion For Temporary Restraining Order ("TRO") And Preliminary Injunction ("PI") enjoining Defendants Tea N' Boba Enterprises LLC, Toan Van Nguyen and Vy Nguyen (collectively "Defendants") from their willful infringement and counterfeiting by using the substantially indistinguishable KUNG FU BOBA[1] mark to Plaintiffs' famous and incontestable federally registered KUNG FU TEA® Trademarks for the same restaurant services and tea-based beverages as Plaintiff's KUNG FU TEA® branded franchised business in violation of Section 32 of the Lanham Act, 15 U.S.C. §§1114 and 1116, and Texas Common Law.  Defendants' unauthorized and infringing use of the KUNG FU BOBA mark, and their continued advertising of KUNG FU TEA® brand tea-based beverages for purchase, also constitute false designation of origin, passing off, unfair competition, trademark dilution and false advertising in violation of Sections 43(a) and (c) of the Lanham Act, 15 U.S.C. §§1125(a) and (c), and Texas Common Law and/or Business and Commerce Code ("BCC") §17.46, as well as unjust enrichment in violation of Texas Common Law and material breach of contract arising from Defendants failure to comply with their termination obligations of a Franchise Agreement ("FA") with Plaintiff KFTF.  Plaintiffs' Memorandum is supported by the accompanying Appendix (**A1-463**), including Declaration (**A1-14**) of Yi-Fan (Michael) Wen, Vice President of Plaintiff KFTU and Manager and Chief of Plaintiff KFTF, and Declaration (**A415-17**) of Tony V. Pezzano, Esq. of Offit Kurman, both with Exhibits.

## I.   <u>INTRODUCTION</u>

Plaintiffs' KUNG FU TEA® branded business is America's largest bubble tea brand with

---

[1] Boba means Bubble Tea in Taiwanese.  Bubble Tea is a tea-based drink that originated in Taiwan in the early 1980s. Taiwanese immigrants brought it to the U.S. in the 1990s. *Wikipedia.*

more than 325+ KUNG FU TEA® franchised shops located throughout the U.S and internationally.  Each franchisee is a retail shop selling bubble tea and a variety of other hot and cold beverages with recipes using Plaintiffs' ingredients and other specified ingredients, as well as equipment Plaintiffs supply or specify.  The franchised shops operate under Plaintiffs' famous and incontestable federally registered KUNG FU TEA® Trademarks.

Defendants were a franchised restaurant located at 3910 Wayne Avenue #102, Wichita Falls, Texas 76308, but Plaintiffs terminated Defendants' franchised restaurant on March 21, 2023, as a result of Defendants' violations of the FA, including by operating this restaurant under the infringing KUNG FU BOBA name.  On April 3, 2023, Defendants agreed that:  (i) the FA is terminated; (ii)  Defendants would "take all necessary steps to completely close" the KUNG FU BOBA restaurant, and on April 19, they confirmed the KUNG FU BOBA restaurant is now "permanently closed;" (iii) Defendants would "pay off the $30,000 in penalties" owed to Plaintiffs under the FA; and (iv)  Defendants "will permanently cease and desist any and all current or future use of the KUNG FU TEA trademarks, and any similar marks, such as KUNG FU BOBA."

Since that time, Defendants have not made a single payment to Plaintiffs to pay back the $30,000 in penalties, and Plaintiffs' learned on or about November 22, 2023, that Defendants were still operating the infringing KUNG FU BOBA shop at the 3910 Wayne Avenue #102, Wichita Falls, Texas address and under a new website, https://kungfuboba.app.infi.us/#/, in the same line of business for restaurant services and tea-based beverages as Plaintiffs' KUNG FU TEA® branded business.  Defendants use the KUNG FU BOBA mark exactly as Plaintiffs do:  as a designation of origin.  But by doing so, without Plaintiffs' permission, Defendants have created a false designation of origin, one designed to promote and draw attention to Defendants' restaurant and tea-based beverages at the expense of Plaintiffs' goodwill and reputation.

2

Defendants' unauthorized use of the KUNG FU BOBA mark, and their continued advertising of KUNG FU TEA® brand tea-based beverages for purchase, constitutes trademark infringement, counterfeiting, false designation of origin, passing off, unfair competition, dilution, false advertising and unjust enrichment in violation of the Lanham Act, 15 U.S.C. §§1051 et seq., Texas Common Law and/or BCC §17.46.  If allowed to continue, such unauthorized trademark use will irreparably harm the goodwill, reputation and distinctive quality of Plaintiff's KUNG FU TEA® Trademarks.  Defendants' use of the KUNG FU BOBA mark must be stopped.

Defendants' operation of the KUNG FU BOBA restaurant and use of the KUNG FU BOBA mark in the name of the restaurant, its website, https://kungfuboba.app.infi.us/#/, advertisements, social media and promotions further violates Defendants' termination obligations in material breach of Defendants' FA with Plaintiffs, including Defendants' noncompetition covenant, obligations to cease using the infringing KUNG FU BOBA mark and payment of the $30,000 in penalties to Plaintiffs.  Defendants' operation of the unauthorized KUNG FU BOBA restaurant in violation of their noncompetition covenant must also be stopped.

## II.    STATEMENT OF FACTS

### A.  Plaintiffs' KUNG FU TEA® Branded Business And Incontestable, Federally Registered Trademarks

Plaintiff KFTU began operation of KUNG FU TEA® shops in May 2010 and continues to operate KUNG FU TEA® shops.  Plaintiff KFTF is the exclusive franchisor of KUNG FU TEA® shops, America's largest bubble tea brand with more than 325+ KUNG FU TEA® franchised shops located throughout the U.S., including 47 locations in Texas, 13 within the Dallas Fort-Worth Metropolitan Area, and internationally with locations in Canada, Cambodia, Taiwan and Japan. **A1-2 at ¶3; A15-242 (2023 Franchise Disclosure Document at A73-92 (Franchisees)); A243-44 (www.kungfutea.com/locations/usa).**  Each KUNG FU TEA® shop is a retail shop

selling bubble tea and a variety of other hot and cold beverages.  All of the teas and other beverages are prepared in accordance with recipes using Plaintiff KFTF's ingredients and other specified ingredients, and using equipment KFTF supplies or specifies. **A2 at ¶4.**

The KUNG FU TEA® Trademarks were first used in commerce at least as early as April 30, 2010, and since then, Plaintiffs and their affiliates have been the exclusive source of the KUNG FU TEA® brand.  They have made extensive and continuous use of the KUNG FU TEA® mark in U.S. Commerce through their authorized franchisees since at least 2011, with rights accruing to Plaintiffs in connection with KUNG FU TEA® shops selling bubble tea and a variety of other hot and cold beverages. As a result of Plaintiffs' authorized franchisees' long use, significant advertising and promotional efforts, extensive sales, and the consistently high quality of the goods and services under the KUNG FU TEA® mark, the mark has national recognition and fame as an indicator of the source of Plaintiffs' goods and services and a symbol of substantial and valuable goodwill.  **A2-3 at ¶5; A249** ("Think of Kung Fu Tea as the Starbucks of bubble tea.").

In addition to the strong common law rights from Plaintiffs' long and extensive use of their KUNG FU TEA® Trademarks, Plaintiff KFTU is the sole owner of all right, title and interest in the KUNG FU TEA® Trademarks U.S. Registration Nos. 4,497,687; 4,857,505; 5,438,824; 5,438,825); 5,443.929; 5,443,930; 5,443,931; 5,588,198; and 5,639,864 that are legally and validly registered with the Principal Register of the United States Patent and Trademark Office ("USPTO").  There are no other federally registered trademarks that use "KUNG FU TEA" for any services or goods.  *See* **A3-6 at ¶6** (Chart Summarizing KUNG FU TEA® U.S. Trademark Registrations); **A252-58 (Reg. No. 4,497,687); A259-66 (Reg. No. 4,857,505)**; **A267-72 (Reg. No. 5,438,824); A273-78 (Reg. No. 5,438,825); A279-84 (Reg. No. 5,443.929); A285-90 (Reg.**

4

**No. 5,443,930); A291-96 (Reg. No. 5,443,931); A297-302 (Reg. No. 5,588,198); and A303-09**

**(Reg. No. 5,639,864) (**Certificates of Registration for Plaintiffs' KUNG FU TEA® Trademarks).

Plaintiffs' federal registrations for the KUNG FU TEA® Trademarks are incontestable under 15 U.S.C. §1065.  Pursuant to 15 U.S.C. §1115(b), Plaintiffs' incontestable registrations are conclusive evidence of the validity of the KUNG FU TEA® Trademarks, Plaintiffs' ownership in and exclusive right to use the trademarks in commerce with, *inter alia*,  restaurant services and tea-based beverages.  *See* **A6 at ¶7; A310-32 (**Section 15 Declarations of Incontestability for KUNG FU TEA® U.S. Registration Nos. 4,497,687 and 4,857,505).

On an annual basis, Plaintiffs have invested substantial time, effort and money in advertising and promoting franchised KUNG FU TEA® shops, restaurant services and tea-based beverages under the KUNG FU TEA® brand.  **A6-7 at ¶8; A15-242 at A112.** Such advertising and promotions of the KUNG FU TEA® brand include website advertisements, social media, print media, menus, point of sale advertising, signs, posters and displays on restaurants and direct mail to consumers.  Example advertisements of the KUNG FU TEA® brand through Plaintiffs' website, www.kungfutea.com, and menu are shown below (**A333-36**):



As a result of Plaintiffs' extensive use and advertising of their franchised KUNG FU TEA® shops, restaurant services and tea-based beverages under the KUNG FU TEA® brand, customers throughout the U.S., including within this jurisdiction, and internationally have grown to identify

Plaintiffs as the source of their KUNG FU TEA® brand.  Plaintiffs' KUNG FU TEA® brand has obtained national recognition and fame.  Plaintiffs' network of customers and customer referrals have garnered industry-wide goodwill and recognition among businesses, families and individuals throughout the country.  Consumers recognize and rely upon the KUNG FU TEA® Trademarks to identify authentic franchised KUNG FU TEA® shops, restaurant services and tea-based beverages and to distinguish them from other restaurants and tea-based beverages. Plaintiffs have derived substantial revenue through their franchised KUNG FU TEA® shops, restaurant services and tea-based beverages under the KUNG FU TEA® brand, and vigorously enforce their KUNG FU TEA® marks to protect their goodwill and brand. **A7-8 at ¶¶10-12; A15-242 at A101.**

The KUNG FU TEA® Trademarks became well known long before Defendants recently reopened their restaurant offering tea-based beverages, including Bubble Tea, using the infringing KUNG FU BOBA mark, including in their restaurant name and their website, https://kungfuboba.app.infi.us/#/, and in advertisements, social media, and promotion of such restaurant and services, including as trade dress in connection with their services, all in breach of Defendants' termination obligations under the FA with Plaintiffs.  **A8 at ¶13**.

### B.  Defendants Secretly Opened Their Unauthorized KUNG FU BOBA Restaurant In Violation Of Their Termination Obligations Under The FA

Defendants were well aware of the existence and renown of the KUNG FU TEA® Trademarks prior to committing the acts complained of herein.  On March 21, 2023, Plaintiffs' counsel sent a Notice of Termination of the FA and Cease and Desist Letter to Defendant Toan Van Nguyen and VTVC Enterprises, Inc. ("VTVC").  **A11 at ¶23; A386-94**.  VTVC is the predecessor of Defendant Tea N' Boba Enterprises LLC, having the same principal place of business which is the KUNG FU BOBA restaurant located at 3910 Wayne Avenue #102, Wichita Falls, Texas.  Mr. Nguyen was the owner, Director and President of VTVC and, on information and

belief, is the owner of Tea N' Boba Enterprises LLC.  **A8-9 at ¶14.**

VTVC and Toan Van Nguyen had entered into the FA **(A337-81)** with Plaintiff KFTF with an effective date of August 16, 2017, to open and operate a KUNG FU TEA® shop located at 3910 Wayne Avenue #102, Wichita Falls, Texas.  Based on an agreement reached between Plaintiff KFTF and VTVC on August 19, 2022, VTVC agreed to close its franchised store as a result of VTVC's violations of the FA, subject to VTVC's completion of all store closing tasks on or before September 18, 2022, with which deadline VTVC did not comply.  Specifically, in or about October 2022, VTVC started operating another store at the approved location under the infringing name KUNG FU BOBA selling bubble tea and a variety of other hot and cold beverages using the names KUNG FU BOBA and KUNG FU TEA® without authorization from Plaintiffs.  **A11 at ¶22.**

In view of the foregoing, on March 21, 2023, Plaintiffs' Cease and Desist Letter provided written notice to VTVC and Toan Van Nguyen of the immediate termination of the FA and Plaintiffs' objection to VTVC's and Mr. Nguyen's unauthorized and infringing use of the KUNG FU TEA® Trademarks.  VTVC's and Mr. Nguyen's infringement of the KUNG FU TEA® Trademarks comprised at least their use of the identical KUNG FU TEA® mark and the substantially indistinguishable KUNG FU BOBA mark in connection with the name of their unauthorized store and the goods and services of their store selling bubble tea and a variety of other hot and cold beverages without authorization from KFTF.  VTVC and Mr. Nguyen also used the identical KUNG FU TEA® mark and the substantially indistinguishable KUNG FU BOBA mark in connection with the advertisement and promotion of their shop and the goods and services of their shop on, *i.e.*, their Google website (*see, e.g.,* webpage  https://goo.gl/maps/VTXLdxkmuWJvMjCK6)).  **A11 at ¶23.** A photograph of Defendants' shop, located at 3910 Wayne Avenue #102, Wichita Falls, Texas, using the infringing KUNG FU BOBA mark without authorization from Plaintiffs is reproduced

below (**A11-12 at ¶ 23; A395-96**):



On April 3, 2023, Toan Van Nguyen signed a Closing Agreement **(A397-400)** agreeing on behalf of himself and VTVC to the following, *inter alia*:

a.      VTVC's KUNG FU TEA® shop located at 3910 Wayne Avenue, #102, Wichita Falls, Texas and owned by Mr. Nguyen that had been operating under the FA with KFTF was closed in August 2022, the FA is terminated and Mr. Nguyen and VTVC "agreed to pay off the $30,000 in penalties" owed to KFTF on a payment schedule of $500 per week, such that the total payment of $30,000 is completed within fifteen months beginning April 1, 2023.

b.      Mr. Nguyen and VTVC will "take all necessary steps to completely close the Kung Fu Boba shop located in Wichita Falls, Texas and … involvement in the business of a retail shop, and any website related thereto, selling a variety of brew tea, bubble tea, coffee, juices, smoothies and other hot and cold drinks on or about March 31, 2023, and no later than April 20, 2023."

c.      Once the Kung Fu Boba shop is closed, Mr. Nguyen and VTVC "will permanently cease and desist any and all current or future use of the KUNG FU TEA trademarks, and any similar marks, such as KUNG FU BOBA.  This includes, but is not limited to any efforts or activities to promote, license, or advertise any store selling bubble tea, brew tea, coffee, juices, smoothies or variety of other hot and cold drinks in the United States under KUNG FU TEA®, KUNG FU BOBA

or any variation of these terms."

By email of April 19, 2023 **(A431-32)**, Toan Van Nguyen represented to Plaintiffs' counsel that the KUNG FU BOBA shop "is now a permanently closed business" and he will send "proof" of the dissolved company once he received it from the secretary of state.  By email of May 8, 2023 **(A433-36)**, Mr. Nguyen sent proof to Plaintiffs' counsel from the Secretary of State of Texas that the VTVC business is now closed**.**

On May 15, 2023, Plaintiffs' counsel sent the first of numerous emails to Toan Van Nguyen **(A437-41)** advising that Mr. Nguyen was in violation of the Closing Agreement for failure to make any payments. Plaintiffs sent follow up emails to Mr. Nguyen in an attempt to receive payment on at least June 26 and 27, July 13 and 21, August 30, September 13, October 16, 20, 24, 30 and 31 and November 4 and 14, 2023. **A442-60.**   To date, not a single payment has been received by Plaintiffs under the Closing Agreement **(A397-400)** signed by Mr. Nguyen.  **A12 at ¶25.**

In the meantime, Defendants registered a new business under the name Tea N' Boba Enterprises LLC on or about June 5, 2023 **(A461-63)** and Plaintiffs learned on or about November 22, 2023, that Defendants' infringing operations of the KUNG FU BOBA shop continue at the 3910 Wayne Avenue #102, Wichita Falls, Texas address and under a new website, https://kungfuboba.app.infi.us/#/, in the same line of business as Plaintiffs' KUNG FU TEA® branded business (**A12 at ¶26).**   Examples of Defendants' willful infringement on their website, advertisements and promotions using the KUNG FU BOBA mark are shown below in snapshots of Defendants' online menu that includes various tea-based beverages, including BUBBLE TEA, Defendants' website still advertising images of KUNG FU TEA® tea-based beverages for purchase and Google search results for "kung fu tea" showing a recent review of Defendants' KUNG FU BOBA restaurant (**A12-13 at ¶26; A401-08**):

9







Defendants use of the KUNG FU BOBA mark is causing actual confusion in the marketplace in Google searches and customer reviews confusing Defendants' KUNG FU BOBA restaurant with Plaintiffs' KUNG FU TEA® brand.  **A13 at ¶27; A409-14.**

Since termination of the FA, Plaintiffs have no business relationship with Defendants, and Plaintiffs have never authorized or licensed Defendants to use the KUNG FU BOBA mark or any other confusingly similar mark to Plaintiffs' KUNG FU TEA® Trademarks for any purpose, including for restaurant services and tea-based beverages.  **A13 at ¶28.**  Defendants' KUNG FU

11

BOBA restaurant services and tea-based beverages are marketed to the same class of consumers, through the same channels of trade, and through the same or similar types of advertising as Plaintiffs. **A13 at ¶31.** Plaintiffs have no control over Defendants' use of the KUNG FU BOBA mark or the quality of services advertised, promoted, and offered by Defendants in connection with the KUNG FU BOBA mark. **A14 at ¶32.** Defendants use of the KUNG FU BOBA mark is designed to trade off the resounding consumer goodwill and reputation of Plaintiffs' KUNG FU TEA® Trademarks and branded business. **A14 at ¶33.**

### 1. Relevant Terms Of Defendants' FA And Defendant Toan Van Nguyen's Guarantee And Assumption Of Obligations Agreement With Plaintiff KFTF

Effective on August 16, 2017, franchisee VTVC and franchisor Plaintiff KFTF entered into the FA **(A337-81)** under which KFTF granted to VTVC the right to operate a franchised KUNG FU TEA® shop at 3910 Wayne Avenue, #102, Wichita Falls, Texas, including a license to sell bubble tea and a variety of hot and cold beverages prepared in accordance with recipes using Plaintiff KFTF's ingredients and other specified or authorized ingredients, and using equipment Plaintiff KFTF supplies or specifies. **A8-9 at ¶14.** The agreement was scheduled to expire on August 16, 2027 **(A337-81 at 381)**, unless terminated before then.

The FA **(A337-81 at A370-73)** gives Plaintiff KFTF the right to terminate the agreement, effective immediately upon written notice, if VTVC fails to meet any of the requirements in ¶5.2.2, including making any unauthorized use of the KUNG FU TEA® Trademarks and failing to cure within 30 days after notice pursuant to ¶5.2.3. Upon termination, VTVC agreed to comply with post-termination obligations, including without limitation "payment of all other amounts owed … that are then unpaid" (¶5.3.1.2) and "cease to use the Marks and the System in any way" (¶5.3.1.4).

In addition, to induce Plaintiff KFTF to enter into the FA **(A337-81 at A365),** pursuant to ¶3.3.3 Noncompetition After Termination, VTVC agreed that VTVC and its owners would not

12

compete with Plaintiff KFTF for a period of two years following termination within 5 miles of the KUNG FU TEA® shop located at 3910 Wayne Avenue, #102, Wichita Falls, Texas or any KUNG FU TEA® shop located anywhere in the world.  **A9 at ¶17.**

The parties agreed in Section 7.3 that if any of the provisions in Article III of the FA **(A337-81 at 78)** were violated, including infringement of the KUNG FU TEA® Trademarks or the noncompetition provision, Plaintiffs "will suffer irreparable harm and will have a cause of action for damages or injunctive relief or both against you in a court of competent jurisdiction."  The parties further agreed in §7.12 of the FA **(A337-81 at 79)** that "[i]n any legal action arising out of or pursuant to this Agreement … the prevailing party will be entitled to recover its reasonable costs and expenses (including reasonable attorneys' fees) incurred…."

Defendant Toan Van Nguyen, as Guarantor, further entered into a Guaranty and Assumption of Obligations Agreement with Plaintiff KFTF on September 18, 2017 (**A382-85 at 84**), acknowledging, in ¶2.4 *Noncompetition*, VTVC's obligations not to compete with Plaintiff KFTF under §3.3 of the FA and that he "personally agrees to comply with and be bound by all  of the Franchisee's obligations under Section 3.3 to the same extent that [VTVC] is  bound by the obligations of Section 3.3, both during and after the term of the Franchise Agreement."  In ¶1.1 *Personal Guaranty* (**A382-85 at 84**), Mr. Nguyen also "personally and unconditionally guarantees to [KFTF] and [KFTF's] successors and assigns the due, punctual and complete payment of all amounts that [VTVC] is obligated to pay to [KFTF] under the Franchise Agreement and under any modification of, amendment to or renewal of the Franchise Agreement."  **A9-10 at ¶¶18-20.**

At all times, Plaintiff KFTF fully performed its obligations under the FA (**A337-81 at 61-65**), including by providing to Defendants certain rights to use Plaintiffs' copyrights (¶3.1.1), trademarks (¶¶3.1.2 to 3.1.4) and confidential information to operate the KUNG FU TEA® shops

13

(¶ 3.2.1) in exchange for Defendants' promise not to compete by operating a Competitive Business that "sells, oriental style teas and other drinks to consumers for consumption and such sales comprise five percent or more of the business's revenues" (¶3.3.1) both during the agreement and for a period two years after termination of the agreement (¶¶3.3.2 and 3.3.3). **A10-11 at ¶21.**

### 2. **Defendants' Termination And Closing Agreement**

On March 21, 2023, Plaintiffs' counsel sent a written Notice of Termination of the FA and Cease and Desist Letter **(A386-94)** to VTVC and Defendant Toan Van Nguyen.  In an agreement reached between Plaintiff KFTF and VTVC on August 19, 2022, VTVC agreed to close its franchised store as a result of VTVC's violations of the FA, subject to VTVC's completion of all store closing tasks on or before September 18, 2022, which deadline VTVC did not meet. Specifically, in about October 2022, VTVC started operating another store at the approved location under the infringing name KUNG FU BOBA selling bubble tea and a variety of other hot and cold beverages using the names KUNG FU BOBA and KUNG FU TEA® without authorization from Plaintiffs. Plaintiffs' letter provided notice of termination of the FA and their objections to VTVC's and Defendant Mr. Toan Van Nguyen's infringement of the KUNG FU TEA® Trademarks.

On April 3, 2023, Defendant Toan Van Nguyen executed a Closing Agreement **(A397-400)** on behalf of himself and VTVC, confirming:  a. termination of the FA and that he and VTFC agreed to pay off the $30,000 in penalties owed to Plaintiffs; b. the Kung Fu Boba shop located in Wichita Falls, Texas will be permanently closed; and c.  he and VTVC "will permanently cease and desist any and all current or future use of the KUNG FU TEA trademarks, and any similar marks, such as KUNG FU BOBA…." **A12 at ¶24.**  Defendants failed to cure their nonpayment of the $30,000 in penalties and their continued operation of the unauthorized KUNG FU BOBA restaurant and use of the infringing KUNG FU BOBA mark.  **A12-13 at ¶¶25-26.**

14

### 3.  Defendants' Violation Of Their Post-Termination Obligations

Despite termination of the FA, Defendants have not complied with their post-termination obligations.  Defendants continue to operate the unauthorized KUNG FU BOBA restaurant at the same location using the infringing KUNG FU BOBA and KUNG FU TEA® marks and have failed to pay Plaintiffs all sums due and owing.  Put simply, Defendants' failure to pay the $30,000 in penalties, their continued operation of the unauthorized KUNG FU BOBA restaurant and their use of the infringing KUNG FU BOBA and KUNG FU TEA® marks are in material breach of the termination obligations under the FA **(A337-81 at 65** (¶3.3.3 *Noncompetition After Termination*)), Guarantee and Assumption of Obligations **(A382-85 at 83-84** (¶1.1 *Personal Guarantee*; ¶2.4 *Noncompetition*)) and Closing Agreement **(A397-400).**

## III.   LEGAL STANDARD FOR TRO/PI

The decision to issue a TRO or award a PI rests within the sound discretion of the district court.  *Weinberger v. Romero-Barcelo*, 456 U.S. 305. 320 (1982).  Section 34 of the Lanham Act provides that district courts "shall have power to grant injunctions, according to the principles of equity, and upon such terms as the court may deem reasonable, … to prevent a violation under subsections (a), (c), or (d) of section 1125 of this title."  15 U.S.C. §1116; *see also* Fed. R. Civ. P. 65 (setting forth procedural requirements for TRO and PI).

When an opposing party receives adequate notice and an opportunity to be heard on a motion for TRO, the procedure that follows does not differ from that of a PI. A plaintiff must show:  "(1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiff will suffer irreparable harm if the injunction is not granted; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) the injunction will not disserve the public interest."  *Whirlpool Corporation v. Shenzhen Sanlida Electrical Technology Company,*

15

*Ltd.*, 80 F.4th 536, 543 (5th Cir. 2023) (affirming PI); *CICI Enterprises, LP v. Fogel Enterprises, Inc.,* 2023 WL 2731048 *4-5(N.D. Tex. 2023 (court grants PI rendering TRO moot).

"A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried their burden of persuasion on all four requirements."  *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).  However, a plaintiff "is not required to prove its case in full at" a PI hearing (*Federal Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985), and at this stage, "the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence" (*Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993)).

Under the Lanham Act, a plaintiff seeking a PI against trademark infringement "shall be entitled to a rebuttable presumption of irreparable harm … upon a finding of likelihood of success on the merits."  15 U.S.C. §1116; *Whirlpool Corporation*, 80 F.4th at 546.  Here, Plaintiffs will suffer substantial and irreparable harm if Defendants are allowed to continue their infringing use of the KUNG FU BOBA and KUNG FU TEA® marks.  By contrast, Defendants, who only recently reopened their unauthorized KUNG FU BOBA restaurant in violation of Defendants' noncompetition covenant, cannot claim hardship from an injunction restraining that which they are legally prohibited from doing.  As shown below, Plaintiffs are entitled to a TRO/PI because: (1) Plaintiffs are substantially likely to succeed on the merits of their claims; (2) Plaintiffs face immediate irreparable harm in the absence of swift injunctive relief; (3) the balance of equities favors issuing a TRO/PI; and (4) the requested injunctive relief would serve the public interest in avoiding confusion about the source and quality of the restaurant services and tea-based beverages.

IV.    **ARGUMENT**

    A.   **Plaintiffs Are Substantially Likely To Succeed On The Merits**

1.  **Plaintiffs Will Prevail On Their Trademark Infringement Claims Under The Lanham Act And Texas Common Law**

To prevail on their trademark-based claims, Plaintiffs "must show two elements:  (1) it possesses a legally protectable trademark and (2) [Defendant's] use of this trademark 'creates a likelihood of confusion as to source, affiliation, or sponsorship.'"  *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017).  Plaintiffs only have to establish one of their trademark-based claims to obtain injunctive relief.  *See TGI Fridays, Inc, v. Great Northwest Restaurants, Inc.,* 652 F. Supp. 2d 763, 767 (N.D. Tex. 2009). Plaintiffs sail across this hurdle.

The incontestable, federally registered KUNG FU TEA® Trademarks are legally protectable marks.  *Savage Tavern, Inc. v. Signature Stag, LLC,* 589 F.Supp.3d 624, 641 (N.D. Tex. 2022) ("registrants enjoy presumptions of validity and exclusivity").  There can be no dispute that the  KUNG FU TEA® design marks are legally protectable. With respect to the KUNG FU TEA®  word marks, to determine whether a word mark is legally protectable, courts determine into which category – (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful – the mark belongs.  *National Bank of Texas, Laredo, Texas v. Union National Bank of Texas, Austin, Texas*, 909 F.2d 839, 844 (5th Circ. 1990) (providing definitions of each of the four categories). The latter two categories are inherently distinctive, whereas generic marks cannot be distinctive and "descriptive marks are distinctive only if they have acquired 'secondary meaning.'" *Streamline Prod. Sys., Inc*., 851 F.3d at 451.  Here, the USPTO has reviewed this issue and required a disclaimer for TEA as the only descriptive element and allowed the KUNG FU TEA® Trademarks on the principal register.  **A252-309.** The words KUNG FU are arbitrary because they do not suggest or describe the restaurant services and tea-based beverages with which they are used, and therefore the KUNG FU TEA® Trademarks are inherently distinctive and legally protectable without any proof of secondary meaning. *See National Bank of Texas,* 909 F.2d at 845.

17

Even if the word mark is somehow found to be suggestive of the services at issue, it is still inherently distinctive and thus legally protectable. *See Id.* Moreover, the KUNG FU TEA® Trademarks, which have been in commercial use since their federal registrations in April 2010 and October 2018, respectively, are "incontestable," "depriving would-be challengers of many otherwise-available grounds for challenging the mark." *Savage Tavern, Inc.,* 589 F.Supp.3d at 641.

The second prong of the trademark infringement test requires a showing that a defendant's use of the mark "creates a likelihood of confusion as to source, affiliation or sponsorship." *Streamline Prod.*, 851 F.3d at 453. Likelihood of confusion means more than a mere possibility; "the plaintiff must demonstrate a probability of confusion." *Id.* Courts assess likelihood of confusion using the so-called "digits of confusion," which include:

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, … (7) any evidence of actual confusion[,] … [and] (8) the degree of care exercised by potential purchasers.

*Id.* "No single factor is dispositive, and a finding of likelihood of confusion need not be supported by a majority of the factors." *Id.* Here, all eight factors support a finding of likelihood of confusion.

(1) <u>**Type of Mark Infringed**</u>: The KUNG FU TEA® Trademarks are commercially strong and distinctive. **A2-8 at ¶¶5-12.** The marks have national and international recognition and fame (**A1-3 at ¶¶3-5; A249-50**), and, as discussed above, are arbitrary and therefore very distinctive. This factor supports likelihood of confusion. *See Streamline Prod.*, 851 F.3d at 454 ("The more distinctive the mark, the more likely that consumers will be confused").

(2) <u>**Similarity of the Marks**</u>: Analyzing the similarity of competing marks "requires consideration of the marks' appearance, sound and meaning." *Streamline Prod.,* 851 F.3d at 454. "Even if two marks are distinguishable, we ask whether, under circumstances of use, the marks

18

are similar enough that a reasonable person could believe the two products have a common origin or association."  In assessing mark similarity, courts "give more attention to the dominant features of a mark." *Id.*  Defendants' KUNG FU BOBA Mark is substantially indistinguishable from Plaintiffs' KUNG FU TEA® Trademarks.  The only difference between the marks is the word BOBA and TEA, although BOBA means tea in Taiwan.  However, both BOBA and TEA are descriptive of restaurant services and tea-based beverages.  Subtracting the descriptive elements of "BOBA" and "TEA" leaves behind the identical dominant portion KUNG FU of the marks.  The competing marks are clearly similar enough for a reasonable person to believe they identify the same source.  This factor supports likelihood of confusion.

(3) **Similarity of the Services:** The parties offer the identical restaurant services and tea-based beverages. *Compare* **A7, 12-13 at ¶¶9-10, 26; A326-29, 333-36** *with* **A401-06**.  This factor supports likelihood of confusion.  *See Streamline Prod.,* 851 F.3d at 454 ("The greater the similarity between the products and services, the greater the likelihood of confusion.").

(4) **Similarity of the Retail Outlets and Purchasers:**  The parties promote and sell their services through the same channels, *i.e.*, their websites, Google, social media and via online and telephone reservations, and to the same type of customers looking for reasonably priced and quality tea-based beverages. *Compare* **A6-7, 12-13  at ¶¶8, 26, 31; A326-29, A333-36** *with* **A401-406.**  In addition, Plaintiffs' have customers throughout the U.S., including this jurisdiction. **A1-2 at ¶3; A73-92; A244.**  This factor supports likelihood of confusion.  *See Donohue v. Wang,* 22-cv-583-DH, 2023 WL 4110543, *4 (W.D. Tex. 2023) ("The greater the overlap between the outlets for, and consumer of, the services, the greater the potential for confusion.").

(5) **Similarity of the Advertising Used by the Two Parties:**  The parties use the same advertising, website advertisements on Google,  print media, point of sale advertising and displays,

posters, signs, online menus and direct mail to consumers. **A6-7, 12-13 at ¶¶8, 26, 31; A335-36; A403-404.** This factor supports likelihood of confusion. *See Streamline,* 851 F.3d at 455 ("The greater the similarity in [advertising] campaigns, the greater the likelihood of confusion.").

(6) **Defendants' Infringing Intent**: "In some situations, the defendant's use of the mark with 'knowledge' of the senior user's mark 'may give rise to a presumption that the defendant intended to cause public confusion.'" *Streamline Prod.,* 851 F.3d at 455. This is just such a situation. Here, Defendants were initially a franchisee under Plaintiffs' KUNG FU TEA® brand, but Defendants' FA was terminated because of Defendants' violations. Thereafter, Defendants misrepresented that they closed their KUNG FU BOBA restaurant, failed to pay sums owed because of their violations and secretly reopened their KUNG FU BOBA restaurant. Defendants are fully aware that their continued operation of the unauthorized KUNG FU BOBA restaurant and use of the infringing KUNG FU BOBA and KUNG FU TEA® marks are in material breach of the termination obligations under the FA (**A365** at ¶3.3.3), the Guarantee and Assumption of Obligations (**A383-84** at ¶¶1.1, 2.4**)** and Closing Agreement (**A397-400**). Defendants' refusal to stop using the infringing KUNG FU BOBA and KUNG FU TEA® marks is designed to unfairly capitalize on the significant goodwill and consumer recognition in Plaintiffs' KUNG FU TEA® Trademarks**.** This factor supports likelihood of confusion.

(7) **Actual Confusion:** Plaintiffs have shown actual confusion in Google searches and customer reviews confusing the Defendants' KUNG FU BOBA restaurant with Plaintiffs' KUNG FU TEA® brand. **A13 at ¶27; A409-14**. "Evidence that consumers have been actually confused in identifying the defendant's use of mark as that of the plaintiff may be the best evidence of a likelihood of confusion." *Streamline Prod.,* 851 F.3d at 457. Moreover, this case is analogous to where a terminated franchisee continues to use the franchisor's mark and name. In such cases,

franchisors routinely prevail on their infringement claims because the likelihood of confusion is so great. *See, e.g., TGI Fridays, Inc,* 652 F. Supp. 2d 763 at 771 ("Because defendants continue to use TGIF's marks and hold their restaurants out as licensed TGI Friday's locations, it is inevitable that customers will be confused into believing that they are dining at TGI Friday's restaurants."). This factor strongly supports likelihood of confusion.

(8) **Degree of Care Exercised by Potential Purchasers:** The parties' restaurant services and tea-based beverages are reasonably priced. *Compare* **A326-29, A335-36** *with* **A403-06.** "Where items are relatively inexpensive, a buyer may take less care in selecting the item, thereby increasing the risk of confusion." *Board of Supervisors for Louisiana State University Agricultural Mechanical College v. Smack Apparel Co.,* 550 F.3d 465, 483 (5th Cir. 2008) ("t-shirts at issue are relatively inexpensive impulse items that are not purchased with a high degree of care."). As the menus for the parties' restaurants include relatively inexpensive impulse items, such as tea-based beverages, this factor supports likelihood of confusion.

### 2.   Plaintiffs Will Prevail On Their Breach Of Contract Claims

There is no dispute that by reopening their unauthorized KUNG FU BOBA restaurant, Defendants violate the noncompetition covenant of the FA by: (1) operating a competitive business; (ii) less than two years after termination of the FA; and (iii) at the same location as their formerly franchised KUNG FU TEA® restaurant. Plaintiffs therefore will prevail on their claim for breach of the noncompetition covenant so long as the covenant is enforceable under Texas law.

Under Texas law, the elements of a breach of contract claim are:  (1) the existence of a valid contract; (2) performance by plaintiff; (3) breach by defendant; and (4) damages sustained as a result of the breach. *Cici Enterprises, LP*, 2023 WL 2731048 at *9.  Under the first element, the threshold issue as to whether the noncompetition covenant is enforceable is twofold:  (1)

whether there is an otherwise enforceable agreement; and (2) whether the covenant is ancillary to that agreement. *Id.* at *10. Here, there can be no dispute that the FA, that includes the noncompetition covenant, is an enforceable agreement and that the covenant is ancillary to that agreement.   The consideration Plaintiffs gave Defendants -- certain rights to use Plaintiffs' copyrights (¶3.1.1), trademarks (¶¶3.1.2 to 3.1.4) and confidential information to operate the KUNG FU TEA® shops (¶3.2.1) – in exchange for Defendants' promise not to compete gave rise to Plaintiffs' interest in restraining Defendants from competing, and thus, the noncompetition covenant is ancillary to the FA. *See Cici Enterprises, LP*, 2023 WL 2731048 at *10.

Whether the covenant is ancillary to the agreement also requires determining if the covenant's "limitations as to time, geographical area, and scope of activity to be restrained … are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promise."  Tex. Bus. & Com. Code Ann. §15.50(a).   The non-competition covenant's limitations of "two years", "5 miles" and as to scope, *i.e.*, "a retail business that sells, oriental style teas and other drinks to consumers for consumption and such sales comprise five percent or more of the business's revenues" are reasonable.  *See Cici Enterprises, LP*, 2023 WL 2731048 at *11 ("two years," "ten-mile radius" and scope limited to "no more restrictive than necessary" to protect "goodwill, reputation and place in the market").

The second element is met because there is no dispute that Plaintiffs performed under the noncompetition covenant by providing to Defendants certain rights to use Plaintiffs' copyrights (¶3.1.1), trademarks (A¶¶3.1.2 to 3.1.4) and confidential information to operate the KUNG FU TEA® shops (¶ 3.2.1) under the FA in exchange for Defendants' promise not to compete.  *See Id.* The third element is met that Defendants breached the noncompetition covenant, because the covenant requires that once the FA is terminated, Defendants will not compete with Plaintiffs for

two years be operating "a retail business that sells, oriental style teas and other drinks to consumers for consumption and such sales comprise five percent or more of the business's revenues."  There is no dispute that Defendants' KUNG FU BOBA restaurant is such a retail business.  *Id.*

Finally, there is a substantial likelihood that Plaintiffs have suffered damages as shown below in the discussion that Plaintiffs' have suffered irreparable harm.  *Id.* at 12.  Thus, Plaintiffs have shown a substantial likelihood of success on their breach of contract claim.

 **B.** <u>Plaintiffs Will Suffer Irreparable Harm Absent A TRO/PI</u>

The Fifth Circuit recognizes the rebuttable presumption of irreparable harm under 15 U.S.C. §1116(a) once the plaintiff has demonstrated a likelihood of confusion.  *Whirlpool Corporation*, 80 F.4th at 546.  Here, the presumption of irreparable harm should be applied based on Plaintiff's strong showing of, not only a likelihood of confusion, but actual confusion where former franchisee Defendants secretly reopen their restaurant using the infringing KUNG FU BOBA and KUNG FU TEA® marks.  Plaintiffs are powerless to control this infringement and imminent harm to their goodwill and reputation.  *See BE Brands, LLC v. Yiwu Dingyi E-Commerce Co.,* 1:22-cv-278-RP, 2022 WL 5568332, *4 (W.D. Tex. 2022) ("When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury…").  Moreover, Plaintiffs are harmed because in breaching the noncompetition covenant, Defendants are using Plaintiffs' trade dress (**A13 at ¶26; A407-08**), and, on information and belief, Plaintiffs' confidential information, such as their recipes and equipment. Defendants' violation of their noncompetition covenant further undermines Plaintiffs' goodwill in the marketplace because it prevents Plaintiffs from refranchising in the market and threatens the stability of Plaintiffs' entire franchise system.  **A13 at ¶¶29-30;** *see Cici Enterprises, LP*, 2023 WL 2731048 at *12-13.  Most compelling is that

Defendants agreed that, if any of the provisions provided in Article III of the FA were violated, including infringement of the KUNG FU TEA® Trademarks or noncompetition, Plaintiffs "will suffer irreparable harm." **A378** (FA Section 7.3).

### C. Any Potential Harm To Defendants Would Be Minimal And Would Be Far Outweighed By The Threatened Harm To Plaintiffs

Should the Court decline to grant a TRO/PI, harm to Plaintiffs would be substantial and irreparable as discussed above. By contrast, the granting of a TRO/PI will just stop Defendants from using the infringing KUNG FU BOBA and KUNG FU TEA® marks. The cost to Defendants to switch to a noninfringing mark should be minimal since Defendants only recently secretly opened their KUNG FU BOBA restaurant. While an injunction would also prevent Defendants from operating the KUNG FU BOBA restaurant for two years, it would not deprive Defendants from their ability to make a living and continue the operation of their restaurant "outside of the area covered by the noncompetition covenant or operate some other sort of restaurant or other business within the area." *Cici Enterprises, LP,* 2023 WL 2731048 at *13. Thus, the balance of equities favors Plaintiff. *See BE Brands, LLC,* 2022 WL 5568332 at *5 ("The potential harm to Defendants in restraining their trade in likely counterfeit and infringing branded goods is outweighed by the potential harm to Plaintiff, its reputation, and its goodwill...").

### D. Enjoining Defendants Serves The Public Interest

" The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *EKF Diagnostics Inc. v. Intermountain Biomedical Services, Inc.,* 2018 WL 3603070 *6 (W.D. Tex. 2018). Moreover, enjoining Defendants from violating their noncompetition covenant "does not disserve the public interest. It is in the public interest to uphold contracts and to enforce a remedy to which the parties have expressly agreed[.]" *Cici Enterprises, LP,* 2023 WL 2731048 at *13. Accordingly, because

Plaintiffs have met their burden to show a likelihood of success on the merits, "a preliminary injunction will not undermine the public interest." *Id.*

### E.   Plaintiffs Should Not Be Required To Post A Bond

Rule 65(c) of the Federal Rules of Civil Procedure provides that "[t]he court may issue a preliminary injunction or temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The Court retains the discretion to set the Rule 65(c) bond amount as it sees fit, and "may elect to require no security at all." *Kaepa, Inc. v. Achilles Corporation*, 76 F.3d 624, 628 (5th Cir. 1996). Here, Defendants have only recently secretly opened their unauthorized KUNG FU BOBA restaurant and will incur minimum harm if they are enjoined, *i.e.*, the minimal expense of suspending their website, https://kungfuboba.app.infi.us/#/, and being required to suspend all advertisements, promotions and social media using the KUNG FU BOBA mark, and the expense of continuing the operation of their restaurant outside of the area of the noncompetition covenant pending resolution of this action. Moreover, no one, and especially not Defendants, who still have not paid Plaintiffs the agreed $30,000 in penalties for violations of the FA, will suffer any harm if the Court grants the requested TRO/PI and stops Defendants' deceptive and infringing activities. Given the strength of Plaintiffs' case on the merits and the minimal anticipated costs of Defendants' compliance, Plaintiffs respectfully request the Court to dispense with the posting of a bond.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enjoin Defendants from their willful infringement of the KUNG FU BOBA and KUNG FU TEA® marks and operating the KUNG FU BOBA restaurant in violation of Defendants' noncompetition covenant.

December 14, 2023

Respectfully submitted,

By: /s/Abelino "Abel" Reyna
Abelino "Abel" Reyna Bar #
24000087
**Patterson & Sheridan LLP**
729 Washington Avenue, Suite 200
Waco, Texas 76701
(Tel): 254-777-5248
(Fax): 877-777-8071
(email): areyna@pattersonsheridan.com

Tony V. Pezzano
To Be Admitted Pro Hac Vice
Tony.Pezzano@offitkurman.com
Matthew D. Asbell
To Be Admitted Pro Hac Vice
Matthew.asbell@offitkurman.com
Chintan A. Desai
To Be Admitted Pro Hac Vice
Chintan.desai@offitkurman.com
**Offit Kurman, P.A.**
590 Madison Ave, 6th Floor
New York, NY 10022
(Tel): 212-545-1900
(Fax): 212-545-1656

*Attorneys for Plaintiffs KF Tea USA Inc. and KF Tea Franchising LLC*

26

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of December 2023, I electronically filed the foregoing **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** with the Clerk of the Court using the CM/ECF system and I also served the following by registered service of process and email:

Toan Van Nguyen, Owner
Vy Nguyen, Managing Member
Tea N' Boba Enterprises LLC
8 Park Place CT
Wichita Falls, Texas 76302-1960
Toan_nguyen506@yahoo.com

United States Corporation Agents,  Inc.
9900 Spectrum Drive
Austin, Texas 78717

/s/Abelino  "Abel"  Reyna
Abelino "Abel" Reyna Bar #
24000087
**Patterson & Sheridan LLP**
729 Washington Avenue, Suite 200
Waco, Texas 76701
(Tel): 254-777-5248
(Fax): 877-777-8071
(email): areyna@pattersonsheridan.com

Tony V. Pezzano
To Be Admitted Pro Hac Vice
Tony.Pezzano@offitkurman.com
Matthew D. Asbell
To Be Admitted Pro Hac Vice
Matthew.asbell@offitkurman.com
Chintan A. Desai
To Be Admitted Pro Hac Vice
Chintan.desai@offitkurman.com
**Offit Kurman, P.A.**
590 Madison Ave, 6th Floor
New York, NY 10022
(Tel): 212-545-1900
(Fax): 212-545-1656

*Attorneys for Plaintiffs KF Tea USA Inc. and KF Tea Franchising LLC*

4858-9033-9479, v. 1