IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| KF TEA USA INC. and KF TEA FRANCHISING LLC,<br><br>Plaintiffs,<br><br>-against-<br><br>TEA N' BOBA ENTERPRISES LLC, TOAN VAN NGUYEN and VY NGUYEN,<br><br>Defendants. | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

## [PROPOSED] TEMPORARY RESTRAINING ORDER

Pending before the Court is Plaintiffs KF Tea USA Inc.'s and KF Tea Franchising LLC's (collectively "Plaintiffs") Motion for Issuance of a Temporary Restraining Order under Federal Rule of Civil Procedure 65, and after considering the Motion and Defendants Tea N' Boba Enterprises LLC's, Toan Van Nguyen's and Vy Nguyen's (collectively "Defendants") response thereto, the Court finds that Plaintiffs have shown that they are entitled to issuance of the Temporary Restraining Order and that the Motion should be GRANTED.

Plaintiffs filed this action on December 14, 2023, against Defendants for alleged trademark infringement, counterfeiting, false designation of origin, passing off, unfair competition, dilution, false advertising and unjust enrichment under the Lanham Act, 15 U.S.C. §§ 1051 et seq., Texas Common Law and/or Business and Commerce Code §17.46, and for alleged breach of contract arising from Defendants' use of the substantially indistinguishable KUNG FU BOBA mark to Plaintiffs' incontestable, federally registered KUNG FU TEA® Trademarks for

the same restaurant services and tea-based flavored drinks and beverages as Plaintiffs' KUNG FU TEA® branded business and Defendants failing to comply with their termination obligations in material breach of a Franchise Agreement with Plaintiffs. Plaintiffs also filed their Motion for a Temporary Restraining Order on December 14, 2023.

Defendants were provided with notice of the motion and the opportunity to present arguments against the issuance of a temporary restraining order.

## I.      FACTUAL BACKGROUND

Plaintiffs' KUNG FU TEA® branded business is America's largest bubble tea brand with more than 325+ KUNG FU TEA® franchised shops located throughout the U.S and internationally. Each franchisee is a retail shop selling bubble tea and a variety of other hot and cold beverages with recipes using Plaintiffs' ingredients and other specified ingredients, as well as equipment Plaintiffs' supply or specify. The franchised shops operate under Plaintiffs' famous and incontestable federally registered KUNG FU TEA® Trademarks.

The KUNG FU TEA® Trademarks were first used in commerce at least as early as April 30, 2010, and since then, Plaintiffs and their affiliates have been the exclusive source of the KUNG FU TEA® brand. They have made extensive and continuous use of the KUNG FU TEA® mark in U.S. Commerce through their authorized franchisees since at least 2011, with rights accruing to Plaintiffs in connection with KUNG FU TEA® shops selling bubble tea and a variety of other hot and cold beverages. As a result of Plaintiffs' authorized franchisees' long use, significant advertising and promotional efforts, extensive sales, and the consistently high quality of the goods and services under the KUNG FU TEA® mark, the mark has national recognition and fame as an indicator of the source of Plaintiffs' goods and services and a symbol of substantial and valuable goodwill.

In addition to the strong common law rights from Plaintiffs' long and extensive use of its KUNG FU TEA® Trademarks, Plaintiff KF Tea USA Inc. ("KFTU") is the sole owner of all right, title and interest in the KUNG FU TEA® Trademarks U.S. Registrations Nos. 4,497,687; 4,857,505; 5,438,824; 5,438,825); 5,443.929; 5,443,930; 5,443,931; 5,588,198; and 5,639,864 that are legally and validly registered with the Principal Register of the United States Patent and Trademark Office ("USPTO"). There are no other federally registered trademarks that use "KUNG FU TEA" for any services or goods.

Plaintiffs' federal registrations for the KUNG FU TEA® Trademarks are incontestable under 15 U.S.C. §1065. Pursuant to 15 U.S.C. §1115(b), Plaintiffs' incontestable registrations are conclusive evidence of the validity of the KUNG FU TEA® Trademarks, Plaintiffs' ownership in and exclusive right to use the trademarks in commerce with, *inter alia*, restaurant services and tea-based flavored beverages.

Defendants were a franchised restaurant located at 3910 Wayne Avenue #102, Wichita Falls, Texas 76308, but Plaintiffs terminated Defendants' franchised restaurant on March 21, 2023, as a result of Defendants' violations of the Franchise Agreement, including by operating this restaurant under the infringing KUNG FU BOBA name. On April 3, 2023, Defendants agreed that: (i) the Franchise Agreement is terminated; (ii) Defendants would "take all necessary steps to completely close" the KUNG FU BOBA restaurant, and on April 19, they confirmed the KUNG FU BOBA restaurant is now "permanently closed;" (iii) Defendants would "pay off the $30,000 in penalties" owed to Plaintiffs under the Franchise Agreement; and (iv) Defendants "will permanently cease and desist any and all current or future use of the KUNG FU TEA trademarks, and any similar marks, such as KUNG FU BOBA."

Since that time, Defendants have not made a single payment to Plaintiffs to pay back the $30,000 in penalties, and Plaintiffs' learned on or about November 22, 2023, that Defendants

were still operating the infringing KUNG FU BOBA shop at the 3910 Wayne Avenue #102, Wichita Falls, Texas address and under a new website, https://kungfuboba.app.infi.us/#/, in the same line of business for restaurant services and tea-based flavored beverages as Plaintiffs' KUNG FU TEA® branded business.  Defendants use the KUNG FU BOBA mark exactly as Plaintiffs do: as a designation of origin.  But by doing so, without Plaintiffs' permission, Defendants have created a false designation of origin, one designed to promote and draw attention to Defendants' restaurant and tea-based flavored beverages at the expense of Plaintiffs' goodwill and reputation.

Defendants' unauthorized use of the KUNG FU BOBA mark, and their continued advertising of KUNG FU TEA® brand tea-based beverages for purchase, constitutes trademark infringement, counterfeiting, false designation of origin, passing off, unfair competition, dilution, false advertising and unjust enrichment in violation of the Lanham Act, 15 U.S.C. §§1051 et seq., Texas Common Law and/or Business and Commerce Code §17.46.  If allowed to continue, such unauthorized trademark use will irreparably harm the goodwill, reputation and distinctive quality of Plaintiff's KUNG FU TEA® Trademarks.

Defendants' operation of the KUNG FU BOBA restaurant and use of the KUNG FU BOBA mark in the name of the restaurant, its website, https://kungfuboba.app.infi.us/#/, advertisements, social media and promotions further violates Defendants' termination obligations in material breach of Defendants' Franchise Agreement with Plaintiffs, including Defendants' noncompetition covenant, obligations to cease using the infringing KUNG FU BOBA mark and payment of the $30,000 in penalties to Plaintiffs.

## II.  LEGAL STANDARD

The decision to issue a temporary restraining order or award preliminary injunctive relief rests within the sound discretion of the district court.  *Weinberger v. Romero-Barcelo*, 456

U.S. 305. 320 (1982).  Section 34 of the Lanham Act provides that district courts "shall have power to grant injunctions, according to the principles of equity, and upon such terms as the court may deem reasonable, … to prevent a violation under subsections (a), (c), or (d) of section 1125 of this title." 15 U.S.C. §1116(a); *see also* Fed. R. Civ. P. 65 (setting forth procedural requirements for temporary restraining orders and preliminary injunctions).

When an opposing party receives adequate notice of, and an opportunity to be heard on, a motion for a temporary restraining order, the procedure that follows does not functionally differ from that of an application for preliminary injunction.  A plaintiff seeking a temporary restraining order or a preliminary injunction must show: "(1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiff will suffer irreparable harm if the injunction is not granted; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) the injunction will not disserve the public interest." *Whirlpool Corporation v. Shenzhen Sanlida Electrical Technology Company, Ltd.*, 80 F.4th 536, 543 (5th Cir. 2023) (affirming grant of preliminary injunction); *CICI Enterprises, LP v. Fogel Enterprises, Inc.,* 2023 WL 2731048 *4-5 (N.D. Tex. 2023) (court grants PI rendering TRO moot).

"A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried their burden of persuasion on all four requirements." *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).  However, a plaintiff "is not required to prove its case in full at a preliminary injunction hearing." *Federal Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985).  "Furthermore, at the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence." *Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993).

Under the Lanham Act, a plaintiff seeking a preliminary injunction against trademark infringement "shall be entitled to a rebuttable presumption of irreparable harm … upon a finding of likelihood of success on the merits." 15 U.S.C. §1116; *Whirlpool Corporation*, 80 F.4th at 546. In this case, Plaintiffs will suffer substantial and irreparable harm if Defendants are allowed to continue their infringing use of the KUNG FU BOBA and KUNG FU TEA® marks. By contrast, Defendants, who only recently reopened their unauthorized KUNG FU BOBA restaurant in violation of Defendants' noncompetition covenant, cannot claim hardship from an injunction restraining that which they are legally prohibited from doing. As shown below, Plaintiffs are entitled to a Temporary Restraining Order and Preliminary Injunction because: (1) Plaintiffs are substantially likely to succeed on the merits of their claims; (2) Plaintiffs face immediate irreparable harm in the absence of swift injunctive relief; (3) the balance of equities favors issuing a Temporary Restraining Order and Preliminary Injunction; and (4) the requested injunctive relief would serve the public interest in avoiding confusion about the source and quality of the restaurant services and tea-based beverages.

### III. ANALYSIS

#### A. Plaintiffs Are Substantially Likely To Succeed On The Merits

#### 1. Plaintiffs Are Substantially Likely To Prevail On Their Trademark Infringement Claims Under The Lanham Act And Texas Common Law

To prevail on their trademark-based claims, Plaintiffs "must show two elements: (1) it possesses a legally protectable trademark and (2) [Defendant's] use of this trademark 'creates a likelihood of confusion as to source, affiliation, or sponsorship.'" *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017). Plaintiffs only have to establish one of their trademark-based claims to obtain injunctive relief. *See TGI Fridays, Inc, v. Great Northwest Restaurants, Inc.,* 652 F. Supp. 2d 763, 767 (N.D. Tex. 2009). Plaintiffs sail across this hurdle.

The incontestable, federally registered KUNG FU TEA® Trademarks are legally protectable marks. *Savage Tavern, Inc. v. Signature Stag, LLC,* 589 F.Supp.3d 624, 641 (N.D. Tex. 2022) ("registrants enjoy presumptions of validity and exclusivity"). There can be no dispute that the KUNG FU TEA® design marks are legally protectable. With respect to the KUNG FU TEA® word marks, to determine whether a word mark is legally protectable, courts determine into which category – (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful – the mark belongs. *National Bank of Texas, Laredo, Texas v. Union National Bank of Texas, Austin, Texas*, 909 F.2d 839, 844 (5th Circ. 1990) (providing definitions of each of the four categories). The latter two categories are inherently distinctive, whereas generic marks cannot be distinctive and "descriptive marks are distinctive only if they have acquired 'secondary meaning.'" *Streamline Prod. Sys., Inc.*, 851 F.3d at 451.

Here, the USPTO has reviewed this issue and required a disclaimer for TEA as the only descriptive element and allowed the KUNG FU TEA® Trademarks on the principal register. The words KUNG FU are arbitrary because they do not suggest or describe the restaurant services and tea-based beverages with which they are used, and therefore the KUNG FU TEA® Trademarks are inherently distinctive and legally protectable without any proof of secondary meaning. *See National Bank of Texas,* 909 F.2d at 845. Even if the word mark is somehow found to be suggestive of the services at issue, it is still inherently distinctive and thus legally protectable. *See Id.* Moreover, the KUNG FU TEA® Trademarks, which have been in commercial use since their federal registrations in April 2010 and October 2018, respectively, are "incontestable," "depriving would-be challengers of many otherwise-available grounds for challenging the mark." *Savage Tavern, Inc.,* 589 F.Supp.3d at 641.

The second prong of the trademark infringement test requires a showing that a defendant's

7

use of the mark "creates a likelihood of confusion as to source, affiliation or sponsorship." *Streamline Prod.*, 851 F.3d at 453. Likelihood of confusion means more than a mere possibility; "the plaintiff must demonstrate a probability of confusion." *Id.* Courts assess likelihood of confusion using the so-called "digits of confusion," which include:

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, … (7) any evidence of actual confusion[,] … [and] (8) the degree of care exercised by potential purchasers.

*Id.* "No single factor is dispositive, and a finding of likelihood of confusion need not be supported by a majority of the factors." *Id.* Here, all eight factors support a finding of likelihood of confusion.

**(1) Type of Mark Infringed:** The KUNG FU TEA® Trademarks are commercially strong and distinctive. The marks have national and international recognition, and, as discussed above, are arbitrary and therefore very distinctive. This factor supports likelihood of confusion. *See Streamline Prod.*, 851 F.3d at 454 ("The more distinctive the mark, the more likely that consumers will be confused").

**(2) Similarity of the Marks**: Analyzing the similarity of competing marks "requires consideration of the marks' appearance, sound and meaning." *Streamline Prod.,* 851 F.3d at 454. "Even if two marks are distinguishable, we ask whether, under circumstances of use, the marks are similar enough that a reasonable person could believe the two products have a common origin or association." In assessing mark similarity, courts "give more attention to the dominant features of a mark." *Id.* Defendants' KUNG FU BOBA Mark is substantially indistinguishable from Plaintiffs' KUNG FU TEA® Trademarks. The only difference between the marks is the word BOBA and TEA, although BOBA means tea in Taiwan. However, both BOBA and TEA are descriptive of restaurant services and tea-based beverages. Subtracting the descriptive elements

8

of "BOBA" and "TEA" leaves behind the identical dominant portion KUNG FU of the marks. The competing marks are clearly similar enough for a reasonable person to believe they identify the same source. This factor supports likelihood of confusion.

(3) **Similarity of the Services:** The parties offer the identical restaurant services and tea-based beverages. This factor supports likelihood of confusion. *See Streamline Prod.,* 851 F.3d at 454 ("The greater the similarity between the products and services, the greater the likelihood of confusion.").

(4) **Similarity of the Retail Outlets and Purchasers:** The parties promote and sell their services through the same channels, *i.e.*, their websites, Google, social media and via online and telephone reservations, and to the same type of customers looking for reasonably priced and quality tea-based beverages. In addition, Plaintiffs' have customers throughout the U.S., including this jurisdiction. This factor supports likelihood of confusion. *See Donohue v. Wang,* 22-cv-583-DH, 2023 WL 4110543, *4 (W.D. Tex. 2023) ("The greater the overlap between the outlets for, and consumer of, the services, the greater the potential for confusion.").

(5) **Similarity of the Advertising Used by the Two Parties:** The parties use the same advertising, including website advertisements on Google, print media, point of sale advertising and displays, posters, online menus and direct mail to consumers. This factor supports likelihood of confusion. *See Streamline,* 851 F.3d at 455 ("The greater the similarity in the [advertising] campaigns, the greater the likelihood of confusion.").

(6) **Defendants' Infringing Intent**: "In some situations, the defendant's use of the mark with 'knowledge' of the senior user's mark 'may give rise to a presumption that the defendant intended to cause public confusion.'" *Streamline Prod.,* 851 F.3d at 455. This is just such a situation. Here, Defendants were initially a franchisee under Plaintiffs' KUNG FU TEA® brand,

9

but Defendants' Franchise Agreement was terminated because of Defendants' violations. Thereafter, Defendants misrepresented that they closed their KUNG FU BOBA restaurant, failed to pay sums owed because of their violations and secretly reopened their KUNG GU BOBA restaurant. Defendants are fully aware that their continued operation of the unauthorized KUNG FU BOBA restaurant and use of the infringing KUNG FU BOBA and KUNG FU TEA® marks are in material breach of the termination obligations under the Franchise Agreement (¶3.3.3 Noncompetition and Termination), the Guarantee and Assumption of Obligations (¶¶1.1, 2.4) and Closing Agreement. Defendant's refusal to stop using the infringing KUNG FU BOBA and KUNG FU TEA® marks is designed to unfairly capitalize on the significant goodwill and consumer recognition in Plaintiffs' KUNG FU TEA® Trademarks. This factor supports likelihood of confusion.

(7) **Actual Confusion**: Plaintiffs have shown actual confusion in Google searches and customer reviews confusing the Defendants' KUNG FU BOBA restaurant with Plaintiffs' KUNG FU TEA® brand. "Evidence that consumers have been actually confused in identifying the defendant's use of mark as that of the plaintiff may be the best evidence of a likelihood of confusion." *Streamline Prod.,* 851 F.3d at 457. Moreover, this case is analogous to where a terminated franchisee continues to use the franchisor's mark and name. In such cases, franchisors routinely prevail on their infringement claims because the likelihood of confusion is so great. *See, e.g., TGI Fridays, Inc,* 652 F. Supp. 2d 763 at 771 ("Because defendants continue to use TGIF's marks and hold their restaurants out as licensed TGI Friday's locations, it is inevitable that customers will be confused into believing that they are dining at TGI Friday's restaurants."). This factor strongly supports likelihood of confusion.

(8) **Degree of Care Exercised by Potential Purchasers**: The parties' restaurant services and

tea-based beverages are reasonably priced. "Where items are relatively inexpensive, a buyer may take less care in selecting the item, thereby increasing the risk of confusion." *Board of Supervisors for Louisiana State University Agricultural Mechanical College v. Smack Apparel Co.,* 550 F.3d 465, 483 (5th Cir. 2008) ("t-shirts at issue are relatively inexpensive impulse items that are not purchased with a high degree of care."). As the menus for the parties' restaurants include relatively inexpensive impulse items, such as tea-based beverages, this factor supports likelihood of confusion.

### 2. Plaintiffs Are Substantially Likely To Prevail On Their Breach Of Contract Claims

There is no dispute that by reopening their unauthorized KUNG FU BOBA restaurant, Defendants violate the noncompetition covenant of the Franchise Agreement by: (1) operating a competitive business; (ii) less than two years after termination of the Franchise Agreement; and (iii) at the same location as their formerly franchised KUNG FU TEA® restaurant. Plaintiffs therefore will prevail on their claim for breach of the noncompetition covenant so long as the covenant is enforceable under Texas law.

Under Texas law, the elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance by plaintiff; (3) breach by defendant; and (4) damages sustained as a result of the breach. *Cici Enterprises, LP*, 2023 WL 2731048 at *9. Under the first element, the threshold issue as to whether the noncompetition covenant is enforceable is twofold: (1) whether there is an otherwise enforceable agreement; and (2) whether the covenant is ancillary to that agreement. *Id.* at *10. Here, there can be no dispute that the Franchise Agreement, that includes the noncompetition covenant, is an enforceable agreement and that the covenant is ancillary to that agreement. The consideration Plaintiffs gave Defendants -- certain rights to use Plaintiffs' copyrights (¶3.1.1), trademarks (¶¶3.1.2 to 3.1.4) and confidential information to

11

operate the KUNG FU TEA® shops (¶3.2.1) – in exchange for Defendants' promise not to compete gave rise to Plaintiffs' interest in restraining Defendants from competing, and thus, the noncompetition covenant is ancillary to the Franchise Agreement. *See Cici Enterprises, LP*, 2023 WL 2731048 at *10.

Whether the covenant is ancillary to the agreement also requires determining if the covenant's "limitations as to time, geographical area, and scope of activity to be restrained … are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promise." Tex. Bus. & Com. Code Ann. §15.50(a).  The non-competition covenant's limitations of "two years", "5 miles" and as to scope, *i.e.*, "a retail business that sells, oriental style teas and other drinks to consumers for consumption and such sales comprise five percent or more of the business's revenues" are reasonable. *See Cici Enterprises, LP*, 2023 WL 2731048 at *11 ("two years," "ten-mile radius" and scope limited to "no more restrictive than necessary" to protect "goodwill, reputation and place in the market").

The second element is met because there is no dispute that Plaintiffs performed under the noncompetition covenant by providing to Defendants certain rights to use Plaintiffs' copyrights (¶ 3.1.1), trademarks (¶¶3.1.2 to 3.1.4) and confidential information to operate the KUNG FU TEA® shops (¶ 3.2.1) under the Franchise Agreement in exchange for Defendants' promise not to compete. *See Id.*  The third element is met that Defendants breached the noncompetition covenant, because the covenant requires that once the Franchise Agreement is terminated, Defendants will not compete with Plaintiffs for two years be operating "a retail business that sells, oriental style teas and other drinks to consumers for consumption and such sales comprise five percent or more of the business's revenues."  There is no dispute that Defendants' KUNG FU BOBA restaurant is such a retail business. *Id.*

Finally, there is a substantial likelihood that Plaintiffs have suffered damages as shown below in the discussion that Plaintiffs' have suffered irreparable harm. *Id.* at 12. Thus, Plaintiffs have shown a substantial likelihood of success on their breach of contract claim.

### B. Plaintiffs Will Suffer Irreparable Harm Absent A TRO/PI

The Fifth Circuit recognizes the rebuttable presumption of irreparable harm under 15 U.S.C. §1116(a) once the plaintiff has demonstrated a likelihood of confusion. *Whirlpool Corporation*, 80 F.4th at 546. Here, the presumption of irreparable harm should be applied based on Plaintiff's strong showing of, not only a likelihood of confusion, but actual confusion where former franchisee Defendants secretly reopen their restaurant using the infringing KUNG FU BOBA and KUNG FU TEA® marks. Plaintiffs are powerless to control this infringement and imminent harm to their goodwill and reputation. *See BE Brands, LLC v. Yiwu Dingyi E-Commerce Co.,* 1:22-cv-278-RP, 2022 WL 5568332, *4 (W.D. Tex. 2022) ("When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury…"). Moreover, Plaintiffs are harmed because in breaching the noncompetition covenant, Defendants are using Plaintiffs' trade dress, and, on information and belief, Plaintiffs' confidential information, such as their recipes and equipment. Defendants' violation of their noncompetition covenant further undermines Plaintiffs' goodwill in the marketplace because it prevents Plaintiffs from refranchising in the market and threatens the stability of Plaintiffs' entire franchise system. *See Cici Enterprises, LP*, 2023 WL 2731048 at *12-13. Most compelling is that Defendants agreed in Section 7.3 of the Franchise Agreement that, if any of the provisions provided in Article III of the Franchise Agreement were violated, including infringement of the KUNG FU TEA® Trademarks or noncompetition, Plaintiffs "will suffer irreparable harm."

### C. Any Potential Harm To Defendant Would Be Minimal And Would Be Far

13

**Outweighed By The Threatened Harm To Plaintiffs**

Should the Court decline to grant injunctive relief, harm to Plaintiffs would be substantial and irreparable as discussed above. By contrast, the granting of an injunction will just stop Defendants from using the infringing KUNG FU BOBA and KUNG FU TEA® marks. The cost to Defendants to switch to a noninfringing mark should be minimal since Defendants only recently secretly opened their KUNG FU BOBA restaurant. While an injunction would also prevent Defendants from operating the KUNG FU BOBA restaurant for two years, it would not deprive Defendants from their ability to make a living and continue the operation of their restaurant "outside of the area covered by the noncompetition covenant or operate some other sort of restaurant or other business within the area." *Cici Enterprises, LP,* 2023 WL 2731048 at *13. Thus, the balance of equities favors Plaintiff. *See BE Brands, LLC,* 2022 WL 5568332 at *5 ("The potential harm to Defendants in restraining their trade in likely counterfeit and infringing branded goods is outweighed by the potential harm to Plaintiff, its reputation, and its goodwill...").

    D.   **Enjoining Defendants' Serves The Public Interest**

" The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *EKF Diagnostics Inc.,* 2018 WL 3603070 *6. Moreover, enjoining Defendants from violating their noncompetition covenant "does not disserve the public interest. It is in the public interest to uphold contracts and to enforce a remedy to which the parties have expressly agreed[.]" *Cici Enterprises, LP,* 2023 WL 2731048 at *13. Because Plaintiffs have met their burden to show a likelihood of success on the merits, "a preliminary injunction will not undermine the public interest." *Id..*

    E.   **Plaintiffs Should Not Be Required To Post A Bond**

Rule 65(c) of the Federal Rules of Civil Procedure provides that "[t]he court may issue a preliminary injunction or temporary restraining order only if the movant gives security in an

amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The Court retains the discretion to set the Rule 65(c) bond amount as it sees fit, and "may elect to require no security at all*.*" *Kaepa, Inc. v. Achilles Corporation*, 76 F.3d 624, 628 (5th Cir. 1996). Here, Defendants have only recently secretly opened their unauthorized KUNG FU BOBA and will incur minimum harm if they are enjoined, *i.e.*, the minimal expense of suspending their website https://kungfuboba.app.infi.us/#/ and being required to suspend all advertisements, promotions and social media using the KUNG FU BOBA mark, and the expense of continuing the operation of their restaurant outside of the area of the noncompetition covenant pending resolution of this action. Moreover, no one, and especially not Defendants, who still have not paid Plaintiffs the agreed $30,000 in penalties for violations of the Franchise Agreement, will suffer any harm if the Court grants the requested TRO/PI and stops Defendants' deceptive and infringing activities. Given the strength of Plaintiffs' case on the merits and the minimal anticipated costs of Defendants' compliance, the Court finds that Plaintiffs are not required to post a bond.

Accordingly, the Court finds that Plaintiff have met its burden of showing that a temporary restraining order should be issued.

IT IS HEREBY ORDERED that Defendants, their directors, members, officers, agents, servants, employees, subsidiaries, affiliates, and all persons in active concert or participation with Defendants, should be restrained and enjoined from:

1. committing any acts of unfair competition and from implying a false designation of origin or a false description or representation with respect to Plaintiffs' KUNG FU TEA® Trademarks;

2. committing any acts of unfair competition by passing off or inducing or enabling

others to sell or pass off goods/services that are not Plaintiffs' goods/services as those of Plaintiffs;

3. using the KUNG FU BOBA Mark in any manner in the name of their restaurant and on their website, domain name, packaging, labels, signs, posters, menus, literature, display cards, statues or other advertising, promotional or social media materials, or any other materials related to Defendants' restaurant services and tea-based flavored drinks and beverages, and any other mark, word, or name confusingly similar to Plaintiffs' KUNG FU TEA® Trademarks;

4. using any designation that is likely to disparage, tarnish, or dilute the distinctive and famous quality of Plaintiffs' KUNG FU TEA® Trademarks;

5. using images of the KUNG FU TEA® Trademarks and products, included but not limited to, on https://kungfuboba.app.infi.us/#/z and from all other advertisements, promotions and social media;

6. committing any acts of unfair competition or deceptive or unlawful trade practices calculated to cause members of the trade or purchasing public to believe that Defendants' restaurant services and tea-based flavored drinks and beverages are the restaurant services and tea-based flavored drinks and beverages of Plaintiffs or are sponsored by or associated with, or related to, or connected with, or in some way endorsed or promoted by Plaintiffs or under the supervision or control of Plaintiffs; and

7. continuing to operate Defendants' business located at 3910 Wayne Avenue #102, Wichita Falls, Texas 76308 in the sale of oriental style teas and other drinks to consumers for consumption and such sales comprise more than five percent of such

16

business's revenues or any such business within five miles of this address or of any KUNG FU TEA® shop anywhere in the world for a period of two years from the termination date of March 21, 2023 of the Franchise Agreement.

The clerk shall issue a notice to Defendants that the hearing on Plaintiffs' Motion for a preliminary injunction is set for _____, 2023, at ____ a.m./p.m.

This Temporary Restraining Order shall dissolve and expire at 11:59 p.m. on _____, 2023, or upon entry of a preliminary injunction consistent with the Federal Rules of Civil Procedure.

Signed on this ___ day of December, 2023, at ____ a.m./p.m.

_____
United States District Judge

4885-5952-3734, v. 1